IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SYLVIA ROCHE, et al.** | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 08-2518** |
| | : | |
| **SPARKLE CITY REALTY, et al.** | : | |

**MEMORANDUM AND ORDER**

**Kauffman, J.**                                                                                                     **June 12 , 2009**

Now before the Court is Defendant EverHome Mortgage Company's Motion to Dismiss Plaintiffs' First Amended Complaint (the "Motion"). For the reasons discussed below, the Motion will be granted.

**I. BACKGROUND**

This action arises from the February 2, 2006 sale of a residence located at 850 E. Schiller Street in Philadelphia, Pennsylvania. According to the First Amended Complaint, Plaintiffs Sylvia Roche and Antonio Martin ("Plaintiffs") approached Defendant Nick Huynh ("Huynh") d/b/a Sparkle City Realty, Inc. (collectively, "Sparkle City") in November 2005 to inquire about purchasing a home and to seek a real estate broker. First Am. Compl. ¶ 13-1.[1] Thereafter, Sparkle City, acting as Plaintiffs' realtor, showed them numerous homes, including a home that it was refurbishing. Id. ¶ 14. When Plaintiffs expressed interest, Sparkle City "required" them to

---

[1] The First Amended Complaint has several errors in paragraph numbering, such as an omitted paragraph 7 and two paragraphs numbered 13. For the sake of clarity, the Court will track the numbering of paragraphs as they appear in the First Amended Complaint. In the case of multiple paragraphs with the same number, the Court will append a designation at the end of the citation, e.g., "13-1," to reflect which paragraph 13 is being cited.

provide payment toward a home inspection, which was thereafter completed without their knowledge. Id. ¶¶ 16-18. Sparkle City then directed Plaintiffs to apply for a mortgage, which was later approved by Defendant Flagstar Bancorp d/b/a Flagstar Bank ("Flagstar"), Plaintiffs' mortgage lender. Id. ¶¶ 19-20.

At the February 2, 2006 closing of the property, Huynh directed Plaintiffs "to execute all closing documents without explanation or review" and claimed that "the premises was in completed, good, and habitable condition." Id. ¶ 22. Relying on Huynh's misrepresentations, Plaintiffs executed the mortgage and other closing documents. Id. ¶ 23. After the closing, "Plaintiffs were for the first time since [the] initial showing able to view their new home." Id. ¶ 24.

When Plaintiffs moved into the residence, they discovered various material defects, including a leaking roof, faulty plumbing, and a deteriorating kitchen ceiling. Id. ¶¶ 25-26. In August 2006, Plaintiffs attempted to speak with Huynh "following Plaintiffs' son's bedroom ceiling collapsing on him" but were unable to do so. Id. ¶ 29. Sparkle City hired workmen to make repairs to the ceiling in November 2007, but they failed to make all necessary repairs. Id. ¶ 30. Plaintiffs eventually defaulted on the loan, and after the default, Flagstar sold Plaintiffs' loan to Defendant EverHome Mortgage Co. ("EverHome"). Id. ¶¶ 31-32.

Plaintiffs allege that Defendants "misrepresented and/or omitted material facts" about the loan, including the fact that its fees were customary and that it had a fixed rate. Id. ¶ 41.[2] Plaintiffs' First Amended Complaint contains a total of ten counts: (1) violations of the Truth in

---

[2] Plaintiffs do not specify which Defendants made which misrepresentations or omissions.

Lending Act ("TILA"), 15 U.S.C. §§ 1601 et seq.; (2) violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2602 et seq.; (3) violations of the Pennsylvania Credit Services Act ("CSA"), 73 Pa. Cons. Stat. §§ 2182 et seq.; (4) violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons. Stat. §§ 201-1 et seq.; (5) a common law claim for fraud and/or fraudulent misrepresentation; (6) a common law claim for breach of contract; (7) a common law claim for negligence and/or negligent misrepresentation; (8) a common law claim for breach of fiduciary duty; and (9) a common law claim for "conspiracy, acting in concert, and aiding and abetting."[3]

EverHome filed the instant Motion on September 4, 2008. In response, Plaintiffs have withdrawn all common law claims against EverHome. See Pls.' Resp. 11 ("For strategy re efficiency [sic], Plaintiffs concede withdrawal of their common law causes of action against [EverHome]."). Accordingly, the three remaining claims against EverHome are the TILA,[4] RESPA, and UTPCPL claims.

## II. LEGAL STANDARD

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court is required "to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to

---

[3] All claims are made against all Defendants, with the exception of Count 3, which is brought only against Sparkle City.

[4] As part of their TILA claim, Plaintiffs also sought relief under the Home Ownership and Equity Protection Act of 1994 ("HOEPA"), which amends the TILA statute. They have since withdrawn that claim. See Pls.' Sur-Reply 3 ("Plaintiffs additionally withdraws [sic] HOEPA.").

the non-moving party." Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). However, the Court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). In deciding a 12(b)(6) motion, "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (citations omitted in original) (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007)).

### III. DISCUSSION

#### A. The TILA Claim

EverHome contends that Plaintiffs' TILA claim is barred by the one-year statute of limitations for claims seeking monetary damages. 15 U.S.C. § 1640(e); see also Smith v. Fid. Consumer Disc. Co., 898 F.2d 896, 903 (3d Cir. 1990).[5] The one-year limitations period begins the date the loan transaction is consummated. See, e.g., Bartholomew v. Northampton Nat'l Bank, 584 F.2d 1288, 1296 (3d Cir. 1978) ("The Truth-In-Lending Act requires that creditors

---

[5] EverHome also argues that because it is only the servicer for the loan at issue, it cannot be held liable under TILA. See, e.g., Stump v. WMC Mortgage Corp., 2005 U.S. Dist. LEXIS 4304, at *30 (E.D. Pa. Mar. 16, 2005) ("As TILA imposes liability only on purchasers and assignees of mortgages, loan servicers cannot be liable under TILA."). Plaintiffs dispute this assertion, contending that EverHome is actually the assignee of the mortgage at issue. Because the Court agrees that the TILA claim is time-barred, the Court need not reach the question of EverHome's actual status as loan servicer or assignee.

make full disclosure prior to the extension of credit. Thus, the statute begins to run on the date that a contract to sell land is executed."); see also Oldroyd v. Assocs. Consumer Disc. Co., 863 F. Supp. 237, 240-41 (E.D. Pa. 1994). In the instant case, the loan documents were executed on February 2, 2006. First Am. Compl. ¶ 22. Plaintiffs did not file their Complaint until May 30, 2008, more than two years after the date the statute of limitations began to run. Accordingly, the TILA claim is time-barred.

Plaintiffs, however, contend that their TILA claim encompasses a claim for recoupment, which is not subject to a statute of limitations.[6] Recoupment, however, is a defense to an independent cause of action, not a freestanding affirmative claim for relief. See Bull v. United States, 295 U.S. 247, 262 (1935) ("[R]ecoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded."); Algrant v. Evergreen Valley Nurseries Ltd. P'ship, 126 F.3d 178, 184 (3d Cir. 1997) ("Recoupment . . . is a defensive claim which can only be asserted in response to an independent action instituted by another party; recoupment does not permit the party asserting it to present otherwise time-barred claims simply by creative pleading in an independent proceeding brought by it."). Indeed, TILA itself explains that recoupment may be asserted after the limitations period only when used as a defense to a debt collection action. See 15 U.S.C. § 1640(e) (explaining that the one-year statute of limitations "does not bar a person from asserting a violation [of TILA] in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State

---

[6] Recoupment is defined as "[t]he right of a defendant to have the plaintiff's claim reduced or eliminated because of the plaintiff's breach of contract or duty in the same transaction." Black's Law Dictionary (8th ed. 2004).

law" (emphasis added)).

Plaintiffs argue that their claim for recoupment is being used as a defense to the foreclosure action on their mortgage. This argument is spurious because Plaintiffs filed the instant suit as an action for damages long after the completion of the Pennsylvania foreclosure proceeding.[7] This is the very definition of an affirmative claim. "When the debtor hales the creditor into court . . . the claim by the debtor is affirmative rather than defensive." Moor v. Travelers Ins. Co., 784 F.2d 632, 634 (5th Cir. 1986).[8] Accordingly, the Court rejects Plaintiffs' attempt to recharacterize their affirmative TILA claim for damages as a recoupment defense to a long-concluded foreclosure action. Id.; see also In re Rocco, 255 F. App'x at 642 (explaining that the plaintiffs' claim for recoupment under TILA was untimely because it was filed over one year after the mortgage's creation and because the defendant already had foreclosed on the property in a separate proceeding); Williams v. Countrywide Home Loans, Inc., 504 F. Supp. 2d 176, 189 (S.D. Tex. 2007) ("Williams did not raise his TILA complaint as a defense to the lender defendants' foreclosure notice in January 2003, December 2003, May 2004, or June 2005. . . . Williams waited until after the bankruptcy court allowed the foreclosure sale to occur. Williams did not file his TILA claims until April 2006. This chronology makes it clear that Williams's claims for TILA damages were not raised defensively to reduce the amount of the lender

---

[7] Indeed, EverHome points out that the foreclosure action ended in a default judgment entered against Plaintiffs on April 10, 2007. The instant action was filed over one year later.

[8] Moreover, Plaintiffs' argument about the defensive use of recoupment in this case is foreclosed by the fact Pennsylvania law prohibits the use of recoupment in mortgage foreclosure actions. See, e.g., In re Rocco, 255 F. App'x 638, 643 (3d Cir. 2007) (citing N.Y. Guardian Mortgage Corp. v. Dietzel, 524 A.2d 951, 953 (Pa. Super. Ct. 1987)).

defendants' claims, but as an affirmative claim."); Van Pier v. Long Island Sav. Bank, F.S.B., 20 F. Supp. 2d 535, 536 (S.D.N.Y. 1998) ("[P]laintiff argues that his TILA claim in effect constitutes assertion of a defense of recoupment to the foreclosure sale initiated by defendants, and therefore is not within the one-year limitations period. Under the plain language of the statute, however, this argument is unavailing, because here plaintiff asserts his TILA claim affirmatively, in an action for damages that he himself commenced, and not as a defense 'in an action to collect the debt.'" (quoting 15 U.S.C. § 1640(e)). In short, Plaintiffs' claim is time-barred, regardless of the label they attach to it.

**B. The RESPA Claim**

As with the TILA claim, the RESPA claim for improper "fee splitting" is subject to a one-year statute of limitations. See 12 U.S.C. §§ 2607(b), 2614.[9] EverHome argues that any "fee splitting" occurred on or before February 2, 2006 when the loan was consummated and that the claim is therefore untimely.[10] Plaintiffs again make the frivolous argument that the RESPA claim is a "recoupment defense" to the now-completed foreclosure action and that such a defense may be asserted without regard to the statute of limitations. As stated above, however, Plaintiffs' claim is not a "defense" to a foreclosure action that ended on April 10, 2007 in a default judgment. Rather, it is an untimely claim seeking monetary damages for alleged wrongdoing that occurred on or before February 2, 2006. Accordingly, the claim will be dismissed.

---

[9] Plaintiffs' RESPA claim is that all Defendants failed to disclose finance charges and, through unexplained means, committed "fee splitting" violations. First Am. Compl. ¶ 51.

[10] Although Plaintiffs admit that EverHome was not the originator of the loan and therefore could not be involved in the initial "fee splitting," they argue that EverHome is responsible for any "kickback" Flagstar received because it is Flagstar's assignee.

**C. The UTPCPL Claim**

EverHome contends that the UTPCPL claim is subject to dismissal because Plaintiffs have failed to plead any of the required elements. "[I]n order to properly state a UTPCPL claim in Pennsylvania, a plaintiff must plead the following elements with particularity: '(1) a specific false representation of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his damage.'" Fass v. State Farm Fire & Cas. Co., 2006 U.S. Dist. LEXIS 51478, at *6 (E.D. Pa. July 26, 2006) (quoting United States ex rel. Atkinson v. Pa. Shipbuilding Co., 255 F. Supp. 2d 351, 407 (E.D. Pa. 2002)). Plaintiffs' Amended Complaint fails to plead any of these elements with respect to EverHome.[11] Plaintiffs' claim is that unspecified "Defendants" committed unfair and deceptive trade practices by misrepresenting the characteristics of the loan, by engaging in fraudulent conduct during the loan's formation, and by imposing prohibited credit costs. First Am. Compl. ¶ 55. Nowhere in the First Amended Complaint is it alleged that EverHome committed any of these practices, and for good reason: EverHome did not become involved with the loan until well after its issuance.

Perhaps recognizing the logical difficulty in holding EverHome accountable for

---

[11]   In response to this argument, Plaintiffs reply that they are proceeding under the "catch-all" provision of the UTPCPL, 73 Pa. Cons. Stat. § 201-2(4)(xxi). "Courts are divided as to the governing standard for a claim under the catch-all provision of the UTPCPL." Jones v. Aames Funding Corp., 2006 U.S. Dist. LEXIS 11119, at *29 (E.D. Pa. Mar. 7, 2006). Some courts require a plaintiff proceeding under this provision to meet all elements of common law fraud, id., while others "require a plaintiff to prove that a defendant's conduct intentionally gave a false impression, that plaintiff relied on some level upon this deceptive act, and that the use of this deceptive act resulted in damages." Id. at *30. Even if the Court were to adopt the second standard, however, Plaintiffs have not identified any conduct on the part of EverHome that gave them a false impression or explained how they relied on this conduct to their detriment.

misrepresentations it could not have made, Plaintiffs argue that because EverHome is Flagstar's assignee, any legal liability Flagstar incurred as a result of the deceptive conduct "inures to EverHome just as would the loan's benefits." Pls.' Resp. 11. However, numerous courts have found that loan assignees cannot be held liable under the UTPCPL without allegations that they specifically committed wrongdoing. See, e.g., Stoudt v. Alta Fin. Mortgage, 2009 U.S. Dist. LEXIS 19297, at *8 (E.D. Pa. Mar. 10, 2009) ("[T]he Court has found ample authority that holds affirmative claims of fraud and violations of consumer protection laws, including Pennsylvania's, are inappropriate to assert against an assignee where there are no allegations that the assignee had any contact with the mortgagor or made any representations to the mortgagor and the factual basis for the claims occurred prior to assignment of the mortgage loan."); Colanzi v. Countrywide Home Loans, Inc., 2008 U.S. Dist. LEXIS 13278, at *8-9 (E.D. Pa. Feb. 22, 2008) (finding that a loan assignee could not be liable under the UTPCPL for deceptive conduct where the assignee was not involved with the loan until after it was made and was not alleged to have committed wrongdoing); McMaster v. CIT Group/Consumer Fin., Inc., 2006 U.S. Dist. LEXIS 28831, at *36 (E.D. Pa. May 11, 2006) ("While [the defendant] is currently the holder of the mortgage, it cannot be held liable under [the] UTPCPL because [the plaintiff] has not offered any evidence to show that [the defendant] was a culpable party."); Christopher v. First Mut. Corp., 2006 U.S. Dist. LEXIS 2255, at *11 (E.D. Pa. Jan. 20, 2006) (dismissing a UTPCPL claim against a loan assignee because the plaintiff "has not asserted any facts which would lead to [the asignee's] liability for deceptive conduct"). As one court has explained, the UTPCPL "provides that consumers may sue a seller of goods or services who commits an unfair trade practice but does not impose liability on parties who have not themselves committed any wrongdoing."

<u>Williams v. Nat'l Sch. of Health Tech., Inc.</u>, 836 F. Supp. 273, 283 (E.D. Pa. 1993) (footnote omitted). Because Plaintiffs have failed to allege that EverHome committed any wrongdoing, it cannot be held liable under the UTPCPL, and the claim will be dismissed.

**IV. CONCLUSION**

      For the reasons discussed above, the Motion will be granted. An appropriate Order follows.